**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**MAXIE EDDINS,**

    **Plaintiff,**

v.                                                                     Case No.  8:12-cv-1842-T-30TGW

**SHERIFF DAVID GEE, Sheriff of
Hillsborough County, Florida, in his official
capacity, et al.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Dkt. 26) and Plaintiff's Response in Opposition (Dkt. 32).  The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted and summary judgment entered in Defendants' favor.

## BACKGROUND

This is an action under Florida law and 42 U.S.C. §1983 premised on Defendant Armando R. Loney's purported battery and use of excessive force while acting under color of law against Plaintiff Maxie Eddins.  During the relevant time, Eddins worked as a confidential informant for the Hillsborough County Sheriff's Office ("HCSO") and other organizations.  According to Eddins, in April 2011, Loney, an HCSO officer, revealed

Eddins' status as a confidential citizen informant to Loney's brother-in-law and potential other non-law-enforcement individuals living in the Hillsborough County area.

Eddins filed a complaint with HCSO against Loney based on Loney's disclosure of Eddins' confidential informant status. On May 5, 2011, HCSO's Professional Standards Section opened an Internal Affairs investigation of Eddins' complaint.

On May 24, 2011, HCSO's Internal Affairs unit interviewed Loney about Eddins' complaint. Loney denied disclosing Eddins' confidential informant status. During the interview, Loney repeatedly referred to Eddins as "the midget," "that motherfucker," and "asshole". Loney admitted to wanting to punch Eddins "in his throat because he's lying." Loney was "pissed off" and wanted to confront Eddins about his lies. (Dkt. 32-1). During his August 8, 2013 deposition, Loney admitted that he made these comments about wanting to punch and choke Eddins out of frustration; it was his way of venting. (Dkt. 28 at 26:6-24).

On June 5, 2011, Eddins exited his residence to smoke a cigarette, was physically assaulted, and lost consciousness. Eddins remembers waking up in the grass. According to Eddins, he was soaked in gasoline. Eddins arrived at the Brandon Regional Hospital at approximately 2:33 a.m. and reported that he lost consciousness during a physical assault.

Deputy Jihad Nassar met with Eddins at the hospital at approximately 5:00 a.m. to interview him. During the interview, Deputy Nassar did not observe any visible injuries. Based on Eddins' statements, Deputy Nassar noted that, "[Eddins] was sitting in front of his house smoking a cigarette when he saw an unknown male approach him. Maxie Eddins lost consciousness and awoke in pain." (Dkt. 26-6).

On June 6, 2011, Eddins provided a written statement to Deputy L. Saxton. In this written statement, Eddins noted that a white male committed the battery. (Dkt. 26-7). Also on June 6, 2011, Eddins called Detective Demetrius Dixon to tell him about the attack. According to Dixon's affidavit, Eddins told him "that he had been attacked by 2 white males." (Dkt. 26-2). Dixon's affidavit also states that Eddins "never implicated Detective Loney, who is a black male, as having any involvement of any kind in this alleged attack." *Id.*

On June 7, 2011, Eddins met with Detectives John Palomino and C. Gibson to discuss the attack. Eddins stated that he was smoking a cigarette while standing outside on the front porch area when he heard footsteps on the side of the residence. Eddins walked towards the area of the sound when he saw two white males approaching him. One of the white males said "what's up now nigga" and the other white male stated "just do it." Shortly thereafter, Eddins regained consciousness and was lying on the ground, sore and soaked with gasoline. Eddins did not know the two white males that attacked him and could not identify them. Eddins was unable to provide the Detectives with "any known enemies or persons suspected of attacking him." (Dkt. 26-6).

The Internal Affairs investigation concluded on July 21, 2011, and resulted in a sustained finding that Loney had violated HCSO Rule 4.3.05 entitled "Communicating Criminal Information" by divulging Eddins' identity to Loney's brother-in-law. (Dkt. 26-4). The record reflects that during the course of the Internal Affairs investigation (that began on

May 5, 2011, and ended on July 15, 2011) Eddins did not make any allegation or complaint that Loney physically battered him or had any other individual batter him. *Id.*

During his August 8, 2013 deposition, Eddins testified, in relevant part, about the details of the June 5, 2011 attack. With respect to who attacked him, Eddins stated: "So, I mean - - and to be truthful, I don't know who did it. I can't put a name or a person." (Dkt. 27 at 53:1-2). With respect to Eddins' earlier statements that he was attacked by white males, Eddins testified as follows:

> Q. So when you said white males, you based that on the voices you heard?
> A. Yes.
> Q. Did you tell the deputies and detectives that back then when it happened and you made your report?
> A. I thought it was white guys.
> Q. All right. Did you recognize the voices?
> A. Not at all.
> Q. Okay. Did anybody witness this happen?
> A. If they did - - I didn't even witness.

*Id.* at 54:3-12.

With respect to Eddins' claim in this case that Loney attacked him on June 5, 2011, Eddins testified as follows:

> Q. Now, the thing that happened on June 5th, where you got beat up outside the house or they poured gasoline, all that, are you blaming Detective Loney for that?
> A. In my heart, I feel like due to his - - I mean due to what he said, it happened.
> Q. I'm saying, are you saying Detective Loney is the one that was out there that night and did it?
> A. I told - - no.
> Q. Okay. Are you saying Detective Loney had people go out there and do that that night?
> A. I'm not sure.

> Q. Okay. Do you have any proof that Detective Loney sent people out there that night to do that?
> A. No.

*Id.* at 80:19-25; 81:1-8.

When asked if Loney had ever been violent with Eddins, Eddins replied "No." *Id.* at 88:10-11. Eddins also admitted that Loney had never punched him in the throat or "choked [Eddins] out". *Id.* at 104:9-12.

The record reflects that, after April 2011, Eddins and Loney did not see each other again until Loney's August 8, 2013 deposition.

Eddins' amended complaint asserts the following claims: a Florida battery claim against Loney in his individual capacity (Count I); a section 1983 claim against Loney in his individual capacity due to the excessive force Loney used against Eddins while acting under color of law (Count II); and a section 1983 claim against Gee for willful failure to supervise, train, and/or control Loney that resulted in the violation of Eddins' constitutional right to be free of excessive force (Count III).

Defendants now move for summary judgment on all claims.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an

otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**DISCUSSION**

Defendants move for summary judgment on Eddins' claims based, in large part, on the complete lack of record evidence establishing that Loney attacked Eddins on June 5, 2011. The Court agrees that Defendants are entitled to summary judgment on all claims.

**I.     Eddins' Battery Claim**

"In Florida, the tort of battery 'consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent.'" *Wynn v. City of Lakeland*, 727 F. Supp. 2d 1309, 1315 (M.D. Fla. 2010) (citing *Quilling v. Price,* 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005)). The record reflects a complete absence of evidence that Loney inflicted harmful or offensive contact upon Eddins.

Eddins attempts to create a disputed fact on the issue of whether Loney attacked Eddins by arguing that Loney admitted that he wanted to punch and choke him. Eddins appears to equate wanting to do a certain act with following through with doing that act. The law does not permit such inferences, especially when Eddins, himself, cannot say who attacked him on June 5, 2011. Indeed, Eddins originally identified white men as his assailants. Loney is a black male. Eddins then stated that he could not say who attacked him. Eddins also admitted that Loney was never violent towards him. On this record, there is simply not a conflict in substantial evidence to pose a jury question. Accordingly, Loney is entitled to summary judgment on the battery claim.

## II. Eddins' Section 1983 Claim against Loney

The first step in any action under section 1983 is to "identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5 (1998). It is axiomatic that Eddins cannot maintain a section 1983 claim against Loney if a constitutional right has not been violated. Eddins' section 1983 claim against Loney relies on Loney's alleged excessive force against Eddins, i.e., the battery committed on June 5, 2011. This claim fails because the battery claim fails as a matter of law.

Notably, Eddins' section 1983 claims also fails because, in addition to failing to point to a constitutional violation, there is no evidence that Loney was acting under color of law. Accordingly, Loney is entitled to summary judgment on the section 1983 claim.

## III. Eddins' Section 1983 Claim against Gee, Sheriff of HCSO

Eddins' section 1983 claim against Gee is in Gee's official capacity as Sheriff of HCSO. Eddins cannot rely upon a theory of *respondeat superior* to hold HCSO liable for Loney's conduct under section 1983. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Any plaintiff bringing a section 1983 claim against a municipality based on the acts of one of its officers must prove two things. First, plaintiff must sufficiently allege a constitutional violation. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). Second, the "plaintiff suing a municipality under § 1983 must show that the municipality itself injured the plaintiff by having in place a policy or custom which violated the plaintiff's rights." *Buckner v. Toro,* 116 F.3d 450, 451 (11th Cir. 1997) (citing *Monell v. Dept. of Social Servs. of New York,* 436 U.S. 658 (1978)). Under *Monell,* the municipal "policy" or

"custom" must be the moving force behind the constitutional violation and "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.'" *City of Canton, Ohio v. Harris,* 489 U.S. 378, 379 (1989).

This claim fails for the same reasons that the battery and section 1983 claim against Loney fail: the record lacks any material evidence that Loney battered or used excessive force against Eddins. Thus, a constitutional violation is lacking as a matter of law. Notably, even if Eddins could establish a constitutional violation, the remaining elements of this claim are completely unsupported in the record, to wit, that HCSO had a "policy" or "custom" that was the moving force behind the constitutional violation. Accordingly, Gee is entitled to summary judgment on the section 1983 claim.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Motion for Summary Judgment (Dkt. 26) is granted.
2. The Clerk of Court shall enter final judgment in favor of Defendants and against Plaintiff.
3. The Clerk shall close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on December 18, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-1842.grantmsj.frm